UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ------------------------------------------- | x | |
| LIJUN XIA and LIJUN YANG, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | MEMORANDUM & ORDER |
| -against- | : | |
| | : | 19-CV-1203 (ENV) (LGD) |
| 62-98 REALTY LLC, JEFF QIU, and DANNY KONG, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| ------------------------------------------- | x | |

VITALIANO, D.J.

Defendants 62-98 Realty LLC, Jeff Qiu, and Danny Kong seek summary judgment on unpaid wages claims that plaintiffs Lijun Xia and Lijun Yang brought against them, pursuant to the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and federal and state common law.[1] The Court referred that motion to United States Magistrate Judge Lee G. Dunst for a Report and Recommendation ("R. & R."), which he issued on December 19, 2024, recommending denial of summary judgment due to disputed issues of material fact regarding 62-

[1] The common law claims included failure to pay wages in a timely fashion under federal common law, *see* First Amended Complaint ("FAC"), Dkt. No. 17, ¶¶ 109-112, and breach of contract under New York common law, *see id.* ¶¶ 113-119.

98's status as Xia and Yang's joint employer. *See* Dkt. No. 49. Defendants filed timely and proper written objections to the R. & R. *See* Defs. Obj., Dkt. No. 50. After careful consideration of the R. & R. and defendants' objections, the Court adopts the R. & R., as modified by this Memorandum & Order.

Background[2]

Defendant 62-98 Realty is a New York limited liability company that owns the real property located at 87-47 63rd Avenue, Middle Village, Queens (the "Property"). Defs. Rule 56.1 Stmt., Dkt. No. 33, ¶ 1. In 2017, 62-98 built a condominium on the Property, and the following year, it engaged contractors, including Suzhong Construction USA, Inc. ("SCU"), to make improvements to the building. *Id.* ¶¶ 2–3. Defendant Qiu is a member and manager of 62-98, and defendant Kong was contracted as its site manager for the condominium improvements. Rule 56.1 Stmt. ¶¶ 6, 15.

The Construction Agreement between 62-98 and SCU required SCU to "furnish[] labor to perform the construction work," and, in accordance with the agreement, SCU hired its own workers and determined their pay rates. *Id.* ¶ 4. Yanming Gu, the owner and manager of SCU and a former defendant in this case, hired Xia and Yang to perform tile work on the Property, promising to pay them $280 per day for their work. Xia Aff., Dkt. No. 35-3, ¶¶ 13–14; Yang Aff., Dkt. No. 35-4 ¶¶ 13–14. While the parties agree that SCU was responsible for hiring Xia and Yang, the

[2] The facts are drawn from the affidavits, exhibits, Rule 56.1 statements, and counterstatements of fact submitted by the parties. Factual disputes are noted. *See* Dkt. Nos. 29-33; 35. Where facts are disputed, "the sources for the claims made in dueling Rule 56.1 Statements" are considered directly. *Cong. Rabbinical Coll. Of Tartikov, Inc. v. Vill. Of Pomona*, 138 F. Supp. 3d 352, 396 (S.D.N.Y. 2015). Citations to pages of the parties' briefing refer to the Electronic Case Filing System ("ECF") pagination, except that citations to a deposition reference the internal document's pagination.

parties dispute who controlled their work schedule and supervised their work. 62-98 contends that, in line with language from the Construction Agreement, SCU determined its workers' schedules, supervised their work, and "was solely responsible for and exercise[d] control over construction means, methods, [and] procedures." Defs. Rule 56.1 Stmt. ¶¶ 4–5. 62-98 further notes that whenever Kong, the site manager, uncovered problems in the construction, he would complain to the contractors' representatives rather than interact directly with the workers. Defs. Rule 56.1 Stmt. ¶ 19. Xia and Yang controverted these contentions, claiming that in actual practice, 62-98, through Qiu and Kong, exercised the authority to adjust their schedules, complaining that on multiple occasions they were required to work on Sundays, and that all schedules were the same regardless of which contractor they worked for. Pl. Rule 56.1 Counterstatement, Dkt. No. 35-7, ¶ 4. Moreover, Xia and Yang testify that Kong gave them direct feedback, including that their work was "good," on multiple occasions. Pl. Rule 56.1 Counterstatement ¶ 19; Xia Aff. ¶ 10.

In December 2018, Gu abandoned the worksite. Pl. Rule 56.1 Counterstatement ¶ 21. According to Xia and Yang, Gu left before paying them for fifty-two worked days, amounting to $14,500 each in unpaid wages. Xia Aff. ¶¶ 15–16. In January 2019, Xia and Yang requested to Qiu that 62-98 pay their salary. Defs. Rule 56.1 Stmt. ¶ 14. Xia and Yang state that they walked Qiu around the Property to display their tile installation, after which Qiu promised payment for their work. Xia Aff. ¶¶ 21, 23. Xia and Yang support these claims with "WeChat" messages from January 18 to February 15, 2019, in which Qiu stated that he was "working on" and "currently verifying" their requested back wages. Dkt. No. 35-2 at 1-5 (English translation). Qiu counters that he never agreed to pay Xia and Yang; rather, he interjects, the "WeChat" correspondence

proves that "neither 62-98 Realty nor [Qiu] had ever agreed to pay plaintiffs." Qiu Affidavit, Dkt. No. 37, ¶ 12.

Xia and Yang say that they were never compensated for their unpaid work, and on February 28, 2019, they filed a complaint in this action, the operative they amended on January 13, 2021. *See* Dkt. Nos. 1, 17. Their complaint seeks relief under various federal and state wage and hour laws. On October 6, 2022, defendants filed a motion for summary judgment, arguing that the claims against them should be dismissed because they were not Xia and Yang's "joint employer," as defined by the relevant labor laws. *See* Dkt. No. 28. With that motion referred to him on December 19, 2024, Magistrate Judge Dunst, finding that there were issues of material fact regarding 62-98's qualification as Xia and Yang's "joint employer" in genuine dispute, recommended that the motion be denied. *See* Dkt. No. 49. Defendants filed timely objections to the R. & R. *See* Dkt. No. 50.

<u>Legal Standards</u>

Summary judgment shall be granted in the absence of a genuine dispute as to any material fact and upon the movant's showing that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of the City of New York*, 746 F.3d 538, 544 (2d Cir. 2014).

The movant carries the burden of demonstrating that there is no genuine dispute as to any material fact, *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005), and the court resolves all ambiguities and draws all permissible factual inferences in the light most favorable to the opposing party. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83

(2d Cir. 2004). Where the nonmoving party "will bear the burden of proof at trial," it bears the initial procedural burden at summary judgment of demonstrating that undisputed facts "establish the existence of [each] element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322–23. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir. 1997). The absence of a genuine factual dispute may be demonstrated by "citing to particular parts of materials in the record, including . . . affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), which "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In 2025, the Second Circuit clarified the requirements for a proper objection to an R. & R. in addition to the fourteen-day service timeline set by Fed. R. Civ. P. 72(a). *See Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359-61 (2d Cir. 2025). "A litigant who has fully and forcefully argued her point in front of the magistrate judge and lost *must* be able to make that argument again to the district judge," the Second Circuit announced, "Otherwise, what value would there be in objecting?" *Id.* at 360-61. At the same time, however, an objection "may not simply rest on the briefs" that the magistrate judge considered. *Id.* at 361. It must "lodge a specific objection to some specific aspect of the [R. & R.]." *Id.* Additionally, although the objection process solicits argument about errors in the R. & R., new "case law and/or evidentiary material, which could have, but were not, presented to the magistrate judge in the first instance" are generally not permitted on objection. *Gov't Emps. Ins. Co. v. Galperin*, No. 23-cv-9241, 2025 WL 909190 (E.D.N.Y. Mar. 26, 2025) (cleaned up).

If an objection is proper, the district court reviews the corresponding R. & R. section(s) *de novo*. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). In the absence of any objection or in the presence of an improper objection, the district court reviews the associated R. & R. section(s) for clear error. *See Nambiar*, 158 F.4th at 359, 361; *GS Holistic, LLC v. New Paradise Inc.*, No. 25-cv-2609, 2025 WL 3654530, at *1 (E.D.N.Y. Dec. 16, 2025). Clear error exists "where, upon a review of the entire record, [the district judge] is left with the definite and firm conviction that a mistake has been committed." *Saveria JFK, Inc. v. Flughafen Wien, AG*, No. 15-cv-6195, 2017 WL 1194656, at *2 (E.D.N.Y. Mar. 30, 2017). Upon its review, a district court "may accept, reject, or modify, in whole or in part" the R. & R.'s "findings or recommendations." *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).

Turning to the wage and hour laws that give rise to plaintiffs' claims, under FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee," while an employee is "any individual employed by an employer." *See* 29 U.S.C. § 203(d); *id.* § 203(e)(1). Federal courts have long recognized that an employee can have two or more joint employers that may be held jointly and severally liable for wages due to an employee. *See, e.g.*, *Falk v. Brennan*, 414 U.S. 190, 195, 94 S. Ct. 427, 38 L. Ed. 2d 406 (1973); *Sanchez v. E.I.G. Auto Salvage, Inc.*, No. 21-cv-8266, 2023 WL 5827669, at *17 (S.D.N.Y. Sept. 8, 2023). Courts assess joint employment by "economic reality rather than technical concepts." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (citing *Goldberg v. Whitaker House Corp., Inc.*, 366 U.S. 28, 33 (1961)).

Courts in the Second Circuit evaluate joint employment by looking at both "formal" and "functional" control. The "formal control" approach considers four factors: (1) the power to hire and fire the employee; (2) supervision and control of the employee's work schedule or conditions

of employment; (3) ability to determine the employee's pay rate and method of payment; and (4) maintenance of employment records. *See Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984); *Osorio v. Vector Structural Pres. Corp.*, No. 19-cv-4896, 2024 WL 4607175, at *4–5 (E.D.N.Y. Oct. 28, 2024). But even where formal control does not exist, a purported joint employer may exercise sufficient functional control over an employee to jointly employ them under the "functional control" approach. The "functional control" test considers six factors: (1) whether the putative employer's premises and equipment are used for the employee's work; (2) whether the contractor (and primary employer of the worker) has a business that can or does shift from one putative joint employer to another; (3) the extent to which the employees perform a discrete line-job integral to the putative joint employer's process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the putative employer supervises the employee's work; and (6) whether the workers work "exclusively or predominantly" for the putative employer. *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003). These tests are "a nonexclusive and overlapping set of factors," *Barfield*, 537 F.3d at 143, and no one factor is determinative.

<u>Discussion</u>

As a threshold matter, defendants' written objections are proper under statutory and Second Circuit law. *See Nambiar*, 2025 WL 3007285. First, defendants served their written objections timely on January 2, 2025, *see* Defs. Obj., Dkt. No. 50, which is within the fourteen-day window required by Fed R. Civ. P. 72(a), *see* Dkt. No. 49. Defendants also articulated their objections with sufficient specificity as to identified portions of the R. & R., heeding the Second Circuit's admonition that "[j]ust as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review." *Nambiar*, 2025 WL 3007285, at *3 (quoting *Lockert*

*v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988)). As a result, given their compliance with this standard, defendants' objections to Judge Dunst's R. & R. will be reviewed *de novo*, unless otherwise stated.

As one of their principal objections, defendants contend that the R. & R. erroneously ruled when it required them to disprove that they were plaintiffs' joint employers, while settled law imposes the burden of proof on plaintiffs to establish defendants' joint employer status. Defs. Obj., Dkt. No. 50, at 7–9. In their objection, defendants correctly state the applicable law, but then incorrectly apply it. In no way did Judge Dunst erroneously shift the proof burden to them.

Clearly, rather than shift the burden of proof, the R. & R. merely stated that a "functional control" analysis revealed genuine disputes of material facts regarding joint employment—and highlighted where plaintiffs pointed to specific evidence supporting that inference. *See, e.g.*, R. & R. at 17 (evaluating plaintiffs' evidence that defendants continued to employ SCU workers after Gu abandoned the worksite in weighing the fungibility factor); R. & R. at 18 (detailing plaintiffs' testimony that Qiu and Kong "regularly supervised them and controlled their work schedule" in weighing the supervision factor); R. & R. at 19 (drawing inference from the evidence of plaintiffs' work schedule in evaluating the exclusivity factor). Tellingly, while defendants sprinkle phrases like "no admissible evidence" and "no objective evidence" throughout their burden of proof objection, the core of their argument is that Xia and Yang's evidence of joint employment is unpersuasive, not that it does not exist. *See, e.g.*, Defs. Obj. at 23 (acknowledging plaintiffs' evidence of supervision but arguing that it "is far from what is required under the *Carter* factor."). Defendants' objection that the R. & R. applied an "incorrect burden of proof" is therefore overruled.

Defendants next object to the R. & R.'s recommendation "that a defendant's failure to specifically brief the six-factor 'functional control' test from *Zheng*, was, on its own, sufficient to deny summary judgment." Defs. Obj. at 6.[3] Fundamentally, though, the R. & R. correctly explains that in the subcontractor context, defendants seeking summary judgment on the basis that they are not joint employers must show that there are no genuine issues of material fact that they lacked both *functional* and *formal* control over plaintiffs. *See* R. & R. at 12–13. Indeed, in *Greenawalt v. AT&T Mobility LLC*, the Second Circuit explained that the *Carter* "formal control" test "is sufficient, but not necessary, to show joint employment," and, in subcontractor cases like this one, a determination of joint employment "hinges" on the "functional control" test from *Zheng*. 642 F. App'x 36, 37 (2d Cir. 2016) (summary order).[4]

Moreover, defendants fail to meaningfully distinguish *Gil v. Pizzarotti, LLC*, which denied summary judgment to a contractor who "did not brief the functional control test or otherwise attempt to show that they did not exercise functional control over plaintiffs." No. 19-cv-3497, 2021 WL 1178027, at *13 (S.D.N.Y. Mar. 29, 2021). Defendants argue in their objection that "[c]ourts in this [c]ircuit have dismissed joint employer claims at the summary judgment stage without defendants employing the six-factor 'functional control' approach or briefing specific factors under it." Defs. Obj. at 12. But none of the cases it cites in support of this contention—*DG & S NY, Inc.*, 406 F. Supp. 3d 216, 221 (E.D.N.Y. 2016) *Chen v. Oceanica Chinese Rest.*, No.

---

[3] Defendants offer some procedural nits in their objection to the R. & R.'s handling of their functional control arguments. Since review of the substantive recommendations on that point is *de novo* and the ruling sustained, any procedural objections defendants advance, even if error, are harmless.

[4] While summary orders do not have precedential value in the Second Circuit, they may serve as "some indication of how the Court of Appeals might rule were it to decide the issue in a binding opinion." *Koehler v. Metro. Transp. Auth.*, 214 F. Supp. 3d 171, 175 (E.D.N.Y. 2016) (citing 2d Cir. Local Rule 32.1).

13-cv-4623, 2016 WL 11818202 (E.D.N.Y. Mar. 31, 2016), and *Dacas v. Duhaney*, No. 17-cv-3568, 2022 WL 5422709 (E.D.N.Y Aug. 11, 2022)—involved subcontractor relationships of the sort at issue here and where the "functional control" approach is "most relevant." *Fernandez v. HR Parking Inc.*, 407 F. Supp. 3d 445, 451 (S.D.N.Y. 2019). *See also* R. & R. at 13. Regardless, even if the R. & R. erred in recommending denying summary judgment due to defendants' failure to brief the "functional control" factors, such an error would be harmless, as the R. & R. proceeded to analyze each factor on its own accord based on the available evidence in the record. *See* R. & R. at 14–21. *See also Young v. Freer*, 829 F. Supp. 32 (N.D.N.Y. 1993).

Defendants lastly object to the R. & R.'s analysis of the "functional control" factors that it concluded could support a finding of joint employment: factors one (premises and equipment); four (fungibility); five (degree of supervision); and six (exclusivity). *See* Defs. Obj. at 18–24.[5] Beginning with factor one, defendants argue that shared premises and equipment cannot support an inference of a property owner's functional control over a plaintiff, because otherwise "any landlord could be considered . . . an employer of all employees located in the landlord's space." Defs. Obj. at 18. The Court acknowledges that "shared premises" is not "anything close to a perfect proxy for joint employment," as it is "perfectly consistent with a legitimate subcontracting relationship." *Zheng*, 355 F.3d at 72. Nevertheless, a factfinder can "use these readily verifiable facts as a starting point in uncovering the economic realities of a business relationship." *Id.* Here, 62-98 owned the Property where Xia and Yang worked and furnished equipment for the project to SCU, who then supplied the equipment to plaintiffs. *See* Construction

[5] Obviously, defendants do not object to the R. & R.'s findings that factors two—whether SCU's business could shift from one putative joint employer to another—and three—whether employees perform discrete line jobs integral to the process of production—would not independently preclude summary judgment. *See* R. & R. at 17-19; Defs' Obj. at 18. In the absence of any objections, the Court accepts these recommendations as correct, well-reasoned, and free of any clear error.

Agreement § 7.3. On this understanding of the facts and law, which the Court reviews *de novo*, the Court agrees with the R. & R.'s reasoning, and finds that a genuine dispute of material fact exists regarding this factor. *See Fernandez*, 407 F. Supp. 3d at 456–57.

The fourth functional control factor asks whether SCU's responsibility to defendants could pass to another contractor, and, if so, whether Xia, Yang, and other subcontractors would continue to work at the Property without material changes. *Zheng*, 355 F.3d at 74. At its core, this factor seeks to answer whether "the *same* employees would continue to do the *same* work in the *same* place" if defendants hired one contractor rather than another. *Id.* (emphasis in original). The R. & R. recommended that this factor weighed against awarding summary judgment based on Xia's and Yang's contention, as sworn to in their affidavits, that defendants "continued to employ Spanish-speaking painters" that "worked side-by-side" with them after Gu abandoned the worksite. R. & R. at 17. Defendants contend that this evidence is inadmissible hearsay, and, since no other evidence supporting a finding of joint employment was offered on this factor, defendants object to Judge Dunst's finding that it did. Defs. Obj. at 21–22.

It is, of course, true that an affidavit filed in support of a motion for summary judgment must, inter alia, demonstrate that the affiant is competent to testify because he is offering testimony within his personal knowledge. *See* Fed. R. Civ. P. 56(c)(4)); *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004); *Ockimey v. Town of Hempstead*, No. 5-cv-3872, 2009 WL 1941915, at *10 (E.D.N.Y. July 6, 2009). This requirement "also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant"—such as an assertion that relays an out-of-court statement of another individual—"is insufficient to create a genuine issue for trial." *Patterson*, 375 F.2d at 219.

In this case, defendants are correct that the assertion in Xia's and Yang's affidavits that Qiu continued to employ Spanish-speaking painters who previously worked with them is inadmissible hearsay, as the allegation relies on a separate individual's out-of-court statement that he saw these painters continuing to work at the construction site. *See* Xia Aff. ¶¶ 26–27; Yang Aff. ¶¶ 26–27. Ultimately, no admissible evidence in the record supports a finding that SCU, as the contractor, was fungible. Accordingly, upon *de novo* review and consistent with Second Circuit law, the Court disagrees with the R. & R.'s conclusion that a genuine issue of material fact exists with respect to the fourth factor. *See Patterson*, 375 F.2d at 219. However, as will be explained further below, weighing all factors together shows that other genuine issues of material fact preclude summary judgment.

The fifth functional control factor assesses the degree to which defendants supervised Xia's and Yang's work. *Zheng*, 355 F.3d at 74.[7] This factor is "largely the same" as the inquiry under the second *Carter* factor and, as defendants assert in their objections, is the most relevant in determining whether a purported joint employer exercises functional control over plaintiffs. *Godlewska v. HAD*, 916 F. Supp. 2d 246, 264 (E.D.N.Y. 2013), *aff'd sub nom.*, 561 Fed. Appx. 108 (2d Cir. 2014). *See also* Defs. Obj. at 22. The R. & R. recommended that this factor "weighs in favor" of denying summary judgment, as "[t]he parties present starkly different versions of defendants' alleged supervision of plaintiffs," and "[t]he Court cannot supplant the role of the jury in making the myriad factual determinations necessary to resolve where the balance of this factor lies." R. & R. at 19.

Defendants' objection reiterates the argument they made on this point before Judge Dunst, claiming that "[d]efendants' motion demonstrated that there is no evidence showing they had formal control over plaintiffs under the [second] *Carter* factor." *See* Defs. Obj. at 22. Since

defendants' objection and their argument in support of it is not a simple unparticularized regurgitation of the argument before Judge Dunst, the objection to this point in the R. & R. is reviewed *de novo*. *Nambiar*, 2025 WL 3007285, at *5. Upon such review of the record evidence, including consideration of testimony from Xia and Yang that defendants Qiu and Kong actively supervised the worksite, commented on worker performance, and mandated a universal schedule for workers, regardless of the contractor that hired them—the Court overrules defendants' objection and adopts the R. & R.'s recommendation that this most important factor prevents the Court from granting defendants summary judgment.

The sixth and final "functional control" factor considers whether Xia and Yang performed their work "exclusively or predominately" for defendants. *Zheng*, 355 F.3d at 75. Based on their 6:30 a.m. to 5:00 p.m., six-day-a-week work schedule, the R. & R. inferred that "it is unlikely that plaintiffs had the time or capacity to perform work for anyone other than defendants during the period they worked on 62-98's condominium." R. & R. at 19–20. Correspondingly, Magistrate Judge Dunst recommended that the sixth factor cuts against summary judgment for defendants. *Id.*

In their objections, defendants cited their underlying motion and argued that "plaintiffs, bearing the burden of proof, failed to present evidence showing they worked exclusively or predominately for SCU." Defs. Obj. at 23. The proper inquiry, however, is whether plaintiffs worked exclusively for defendants, the putative joint employer, not SCU, and, further, the R. & R. properly relied on evidence in the record to infer that the exclusivity factor could weigh in favor of joint employment. *See, e.g.*, *Fernandez*, 407 F. Supp. 3d at 450. Upon *de novo* review, therefore, defendants' objection to the R. & R.'s analysis of the exclusivity factor is overruled, and the recommendation is adopted.

Finally, although the Court has sustained one of defendants' objections to the R. & R.—with respect to the fourth functional control factor—it has not upset the R. & R.'s essential finding that there are genuine issues of material fact in dispute that preclude summary judgment. That conclusion, the Court finds upon *de novo* review, is correct, and summary judgment is denied.

<u>Conclusion</u>

In line with the foregoing, Judge Dunst's R. & R., as modified by this Memorandum & Order, is adopted as the opinion of the Court, and defendants' motion for summary judgment is denied.

The parties are directed to proceed before Magistrate Judge Dunst for the continued pre-trial management of this case.

So Ordered.

Dated: Brooklyn, New York

September 29, 2026

*/s/ Eric N. Vitaliano*

ERIC N. VITALIANO

United States District Judge